City of Columbus, Appellee, *v.* Mothersbaugh, Appellant.

(No. 5458—Decided April 24, 1957.)

*Mr. Russell Leach,* city attorney, *Mr. Bernard T. Chupka* and *Mr. D. Edgar Barkeloo,* for appellee.
*Mr. Gale R. King,* for appellant.

Bryant, J. Russell Mothersbaugh, defendant, appellant herein, was convicted in the Columbus Municipal Court of violating a municipal ordinance prohibiting the operation of a motor vehicle while under the influence of intoxicating liquor or alcohol. Most of the facts in the case are not in dispute, but Mothersbaugh denies he was under the influence of intoxicating liquor. He testified that he worked a double shift at his place of employment at the request of his employer. In other words, instead of working from 3 p. m. to 11 p. m. as usual, he worked from 3 p. m. until 7 a. m., a total of 16 hours.

He testified further that after quitting work at 7 a. m. he, in company with other employees, went to the home of one of them where they engaged in playing cards until well past the noon hour. He stated that during the time the card game was in progress he had two and only two drinks of intoxicating liquor. The card game came to an abrupt halt, according to Mothersbaugh, when his host accused him of cheating and a fight ensued. Mothersbaugh testified that his assailant over-

powered him and that he was beaten badly and temporarily rendered unconscious. He testified that after the fight was stopped he drove several blocks to a restaurant where he was supposed to meet his wife. Upon arriving there and not finding his wife, he came out again. It was at this point that he was arrested by the city patrolman.

On behalf of the city of Columbus, two witnesses were offered, one of them a man who identified himself as a junk dealer and who signed the affidavit against Mothersbaugh and the other a city patrolman who arrested Mothersbaugh outside the restaurant above referred to. The junk dealer had observed Mothersbaugh driving for a number of blocks and claimed that Mothersbaugh drove off the road at one point between a telephone pole and a stop sign, backed up and proceeded down the street weaving from one side of the road to the other at such a speed that, although the witness traveled at the rate of 55 miles an hour, he could not overtake Mothersbaugh. He said that Mothersbaugh had an odor of alcohol about him, had difficulty standing and was under the influence of alcohol. The city patrolman likewise testified as to the odor of alcohol on the breath of the defendant, that his hair was mussed, that he otherwise presented a disheveled appearance and that, in his (the police officer's) opinion, he (defendant) was under the influence of alcohol. The patrolman testified further the defendant refused to give a specimen of blood or of urine for analysis.

The first assignment of error made by Mothersbaugh is that the verdict of the jury was not sustained by sufficient evidence. We are well aware that there is a sharp dispute in the testimony. It is, of course, the settled law of this state that a verdict and judgment will not be reversed upon the weight of the evidence except as a matter of law. It was, of course, stipulated in the case that Mothersbaugh was driving the vehicle, and the principal, and perhaps the only, question was whether he was at the time under the influence of intoxicating liquor or alcohol. The junk dealer and the city patrolman stated that in their opinions the defendant was under the influence of intoxicating liquor, and each stated the things he observed to support the conclusions he reached. On the other hand, Mothersbaugh and another witness, the wife of his host at the card

game, testified he was not under the influence of intoxicating liquor but that he gave evidence of being extremely tired due to the 16 hours of work and loss of sleep. Both testified as to the fist fight which terminated the card game and to the blows about the head received by Mothersbaugh.

The members of the jury had the opportunity to see the several witnesses on the stand in the courtroom. They were able to observe many things which are important in weighing evidence besides the mere words spoken. We do not feel that we can say as a matter of law that this judgment should be reversed as being against the weight of the evidence.

The second assignment of error is based upon two alleged erroneous charges given by the court to the jury. The first language objected to is as follows:

"I charge you, members of the jury, you will be justified in finding the defendant guilty in this case if the prosecution has proved the essential elements of the charge."

The above language, standing alone, is, of course, open to objections if considered by itself. The main complaint with reference to the above language is based upon errors of omission, and when the other parts of the charge are considered, as they must be, it is our opinion that the jury was correctly informed as to the law and, therefore, the defendant was not prejudiced thereby.

The next language objected to was not strictly a part of the court's charge but was language directed by the court to the jury on the court's own motion following the general charge and a special charge.

Testimony was offered at the trial that the police department requested a sample of blood or urine for analysis to determine the amount of alcohol present but the defendant refused to give such sample. At the conclusion of the court's charge, defense counsel requested a charge that the defendant had a constitutional right to refuse to give such a sample, and the court so charged the jury. Both sides appeared satisfied. The bill of exceptions discloses the following language:

"The court: Well, the court, on its own motion, will make one further statement. That is, the court does consistently render not guilty verdicts where people have taken a urine or blood

test and that on analysis that shows that the alcoholic content was found to be below that making a person under the influence.''

Defense counsel entered an immediate objection to the above statement terming it high prejudicial and stating that the record contained no evidence with reference to the facts stated in the court's charge.

Counsel for Mothersbaugh claimed that there was no testimony as to what alcoholic content of the blood or urine was required to place a defendant under the influence of alcohol, that the statement of the court as to what he did consistently in other cases is entirely unsupported in the record and that the statement amounted to an invasion of the province of the jury to the prejudice of Mothersbaugh.

It is, of course, common knowledge that juries pay particular attention to statements of the trial judge from which it follows that trial courts must exercise the highest degree of care to refrain from making unnecessary comments prejudicial to litigants.

In 39 Ohio Jurisprudence, 669, Trial, Section 92, it is said:

''The law recognizes that juries are influenced by the language of the presiding judge and regard his attitude and his commands and instructions as controlling far above any suggestions of counsel or witness. It requires therefore that during the course of a trial, the judge refrain from remarks which are calculated in any way to influence the minds of the jury. Thus, he should refrain from making any unnecessary comments which might tend to a result prejudicial to a litigant. It is highly improper for a trial judge, in the midst of a charge, while commenting upon the speed laws, to digress and address drivers in the audience, calling their attention to such speed statutes, and cautioning them to 'avoid the injury or killing of people who are in the exercise of their rights to cross and be upon the streets,' although as a rule inadvertent remarks made by a trial judge may be cured by him by properly instructing the jury with regard thereto.

'' In this respect the judge should make prompt retraction, and admonish the jury in unmistakable terms that his improper

remarks are not to be considered by them, although the effort of the trial court thereafter to minimize prejudice arising from his improper comments, by cautioning the jury that such remarks should not be considered by them in their consideration of the rights of the parties on trial, may not, under the circumstances prevailing at the trial, cure the error so committed. And in general, any improper remarks made by the trial court in the presence of the jury which have a tendency to prejudice their minds against the unsuccessful party will afford grounds for a new trial, or for a reversal of the judgment rendered. * * *''

The language objected to might well have been interpreted by the jury as a suggestion or an opinion by the trial court as to the guilt or innocence of the accused. We are unable to find any evidence in the case which supports the statements of fact contained in the court's statement. It is, of course, well settled that each case must be determined upon its own facts and that which is done, consistently or otherwise in other cases, can have no proper bearing in determining the question of guilt or innocence in the case now before the court.

It is, therefore, our opinion that this portion of the second assignment of error is well taken, that the error was prejudicial to the right of the accused and, therefore, that the verdict and judgment must be set aside and the cause remanded for a new trial. It follows, therefore, that the third assignment of error, namely, the overruling of the defendant's motion for a new trial, likewise was erroneous for the reasons above set forth.

*Judgment reversed.*

PETREE, P. J., and MILLER, J., concur.